TOWN OF POWNAL *v.* JOSEPH MYERS AND DANIEL MYERS.

A gift to a town of land, the use to be appropriated for the support of preach-
ing in such town, when made by a private person, would seem to be in
the nature of a personal trust, and may be modified, by changing the form
of the investment, or funds, 1, From convenience· or necessity, when
the *cestui que trust* is not *sui juris* ; and 2, By consent of the donor and
the *cestui que trust*, through the agency of the trustees, when the *cestui
que trust* is *sui juris*.

Such consent may be implied from circumstances, or from lapse of time, or
from both.

The legal estate, in such case, vests in the trustees, and they may convey it,
even in fraud of the trust, so as to pass the title absolutely, to one who is
ignorant of the trust ; or, to one who is conusant of such trust, so as to
pass the title subject to the incumbrance of the trust. And, *Per* REDFIELD
J. in the latter case the only remedy the *cestui que trust* could have against
the grantee would be in a court of chancery.

EJECTMENT for land in Pownal, being a part of the lot reserved by
the charter to the first settled minister in said town. Plea, the
general issue, and trial by the jury.

On trial the plaintiffs introduced the records of the town of Pownal
showing the appointment of a committee, at a town meeting holden
on the 16th day of November, 1789, to examine the claim of Elder
Benjamin Gardner to the ministerial right in the town, and, if they
found his claim valid, to take a deed of the land from him, accord-
ing to certain propositions he had made ; together with the report

of said committee, that his claim was valid; and the deed from Gardner to the town, conveying the land " in trust, the rents and profits to go and be disposed of to and for the use and support of a gospel minister, or ministers, in the eastern and western part of the town, in proportion to the number of inhabitants attending or inclined to each respective meeting."

The defendants introduced the records of the town, showing a vote of the town, at a meeting holden March 27, 1797, to sell the land in question, "and put the money at interest for the support of the gospel in said town," and the appointment of a committee to sell, of whom Benjamin Gardner was one. Also deeds from the selectmen of the town, of whom Benjamin Gardner was one, dated May 8, 1797, and conveying the premises demanded, and regular conveyances of the title from the grantees in said deeds to the defendants. Also evidence tending to prove that the defendants and their grantors had, under said conveyances, claimed and possessed the premises in fee, adversely to the plaintiffs, from the time said conveyances were made by the selectmen; and that the selectmen had loaned the money received for said land, and had appropriated the interest for the support of the gospel in substitution for the rents and profits of the land.

The court held that the conveyance from Gardner to the selectmen was not a public trust, but a private grant, subject to modification with his consent, and that his consent would, after thirty years, be presumed. Verdict for defendants. Exceptions by plaintiffs.

*J. S. Robinson, R. Pierpoint* and *P. Isham* for plaintiffs.

1. The court erred in holding that this was not a public trust. The criterion for determining whether a trust be public or private does not depend upon whether the grant emanates from the government, or from an individual, but upon the character and object of the trust, as well as its extent. Thus it was held by Lord Hardwick, in *Att'y General* v. *Pearce*, 2 Atk. 87., that a devise to the poor of a parish was a public charity. 2 Kent. 275. And in *Middlebury College* v. *Cheney*, 1 Vt. 351, a conveyance by an individual of land for the use of the college was held a public use.

2. There is no legal bar to the plaintiffs' action, since there is

52

no statute of limitations applicable to the case.    The statutes of 1801 and 1802 save the right of entry upon lands granted to public or pious uses, and provide that ejectment may be sustained for such lands, notwithstanding any statute of limitations.    Sl. St. 292. 1 Vt. 57.    *Sumner v. Child*, 2 Conn. 629.

3.    In the case of executory trusts,  as where there is a devise to A. in trust to convey to B. on his attaining his majority, both courts of law and equity apply  the doctrine of presumption.    7 T. R. 2.    4 Ib. 682.    But, by the terms of  the grant in this case, the trust is  to endure forever ; no authority is given  to the trustee  to convey ;  there are no *cestui que trusts* who  are entitled to have, or who could in equity  compel, a conveyance.    The deeds executed by the selectmen profess to have  been made under an authority derived from the vote of the  town, and this negatives the presumption of Gardner's consent.

But the consent of Gardner alone could not authorize a modification of the trust, without the concurrence of the  trustee and *cestui que trusts*.   Not only the legal voters at the date of  the deed are *cestui que trusts*, but all those who should become such forever thereafter. 11 Vt. 334.   Wherefore it was impossible to obtain the assent, to a modification of the trust, of those who are to be ultimately benefited by it.    No presumption of a  grant can be made where it would be impossible ; *Bunce* v. *Wolcott*, 2 Conn. 27 ; nor where it is against law ; 11 East 488 ; nor  where the supposed grantor had no legal capacity to make the  grant; 3 Vt. 560 ; nor where trustees would be guilty of a breach of trust ; 8 East 248.    2 Conn. 615.

4.    The vote of the town, authorizing the selectmen to convey on their behalf,  and the conveyance by the selectmen of the land held in trust, are both absolutely void; *Lampson et al.* v. *New Haven*, 2 Vt. 14 ; 2 Story's Eq. 242 ; nor is the town estopped from denying that any estate passed by the deed from the selectmen.    *Fairtitle* v. *Gilbert;* 2 T. R. 169.

5.    The deeds are the individual deeds of the selectmen.    To give them the effect contended for, they should have been signed in the name of the principal. 2 Kent 630.  Payley on Ag. 153.    *Tippets* v. *Walker*, 4 Mass. 595.    *Wood* v. *Tate*, 5 B. &. P. 246.

Pownal *v.* Myers et al.

*Hall* and *Lyman* for defendants.

I. The plaintiffs can derive no aid in this action from the fact that the land is claimed as a trust estate, and that there may be others, not parties to the suit, having an equitable interest in it.

1. In ejectment the plaintiff can only recover on the strength of his *legal* title. 2 Stephen's N. P. 1375-6. *Beach v. Beach,* 14 Vt. 28, 32.

2. The *cestui que trust* has but an equitable interest in the estate; and his remedy for a violation of his rights is in a court of chancery only. 1 Ch. Pl. 67. 1 Story's Eq. 28, § 29. 2 Sw. Dig. 115.

3. The *trustee,* being vested with the legal estate, has the sole power and dominion over it, including the power of divesting himself of it at pleasure. If a purchaser from him have knowledge of the trust, equity will compel him to hold the land subject to the trust; but the *vendor* can no more recal his grant, than if it had been of an estate not subject to a trust. 2 Story's Eq. 230, § 964; 241, § 977; 255, § 994. 1 Cruise's Dig. 424, §§ 1-6, 9-13. 2 Ib. 376, 406.

II. It would be doing the defendants manifest injustice to compel them to contest the rights of the *cestui que trusts* in this action.

1. Nothing is known of their wishes in regard to this suit. They may be content with the substitute which they receive for the rents and profits of the land.

2. In equity a suit in their favor might be barred by the length of time in which they have acquiesced in the reception of the substitute, though the statute of limitations may not have run at law. 2 Story's Eq. 735, 238.

3. The sole ground, on which the plaintiffs seek to recover, is on the assumption of a proposition,—viz., that the sale of the estate by the plaintiff was a breach of trust,—the correctness of which can only be determined by a court of equity, and that upon a knowledge of all the facts and circumstances under which the sale was made.

It is not every departure from the letter of an instrument of trust, that is a breach of it. If the trustee, in changing the situation and form of the trust fund, act in good faith, and for the apparent benefit of the trust, he will not be holden as for a breach of trust. 2

Story's Eq. 242, § 978.　Ib. 323, § 1064.　*Att'y General* v. *Warren*, 2 Swanst. 518.　*S. C.* 1 Chit. Dig. 214.　Ib. 86, 87.　*Attorney General* v. *Mayor of Bristol*, 2 Jac. & W. 321.

III.　The plaintiffs never acquired a legal title to the land.　The deed was to the selectmen, and they are to be considered the trustees, and the town the *cestui que trusts.*　Hasw. St. 28, 29, 158, 134, 184, 202, 208.　1 Bac. Abr. 597.　1 Bl. Com. 394, and note. *Pittstown* v. *Plattsburg*, 18 Johns. 418.　*Jackson* v. *Hartwell*, 8 Johns. 422.　Ang. & Am. on Corp. 17–19.　*Bennington* v. *McGennes*, 1 D. Ch. 44.　*Townshend* v. *Gray*, Ib. 127.　*Selectmen of Windsor* v. *Jacob*, 1 Tyl. 241, 2 Tyl. 192.　*Rockingham* v. *Hunt*, Brayt. 66.　Sl. St. 159, 196.　*Gardner* v. *Rogers*, 11 Vt. 334.

If the selectmen had not capacity to take the land, then the deed was inoperative, and the legal estate remained in the donor and his heirs.　Shep. Touch. 508, 237 ; *Jackson* v. *Corey*, 8 Johns. 385 ; *Johnson* v. *Hodgson*, 8 East 37 ; *Hornbeck* v. *Westbrook*, 9 Johns. 74 ; *Stone, Ex'r.* v. *Griffin*, 3 Vt. 400.

IV.　But if it be held that the deed passed the legal estate to the town, the town is not entitled to recover in this action, for they have, by sufficient deeds, conveyed the legal title to the defendants. Hasw. St. 32 ; Sl. St. 167; *Harrington* v. *Gage*, 6 Vt. 532 ; *Hodgson* v. *Dexter*, 1 Cranch 345, 364 ; *Langdon* v. *Strong*, 2 Vt. 237, 255 ; *Warner* v. *Mower*, 11 Vt. 390 ; *Magill* v. *Hinsdale*, 6 Conn. 464 ; *Springfield* v. *Miller*, 12 Mass. 416; *School Dist.* v. *Wood*, 13 Mass. 192 ; *Chatham* v. *Brainerd*, 11 Conn. 60 ; *Pomeroy* v. *Mills*, 3 Vt. 279, 410 ; *Cleveland* v. *Allen*, 4 Vt. 176 ; *Beach* v. *Haynes*, 12 Vt. 15 ; 1 Greenl. 231 ; Vt. State Papers, 406, 412 ; 2 Stark. Ev 31 ; *State* v. *Catlin*, 3 Vt. 530.

V.　By the repeal of the laws authorizing towns to impose taxes for the support of ministers of the gospel, and the limitation of their powers to certain specified objects, the town has become incapacitated to hold the land for the purposes of the trust, and the legal estate has returned to the heirs of the original donor.　2 Tol. St. 177, 180 ; Rev. St. 95 ; Angel & Am. on Corp. 103 ; *Jackson* v. *Hartwell*, 8 Johns 422 ; *Parish in Sutton* v. *Cole*, 3 Pick. 232, 237 ; Shep. Touch. 524 ; *Jackson* v. *Myers*, 3 Johns. 385, 391.

VI.　The plaintiffs are also barred by the statute of limitations.

Hasw. St. 100; Sl. St. 289, § 6; *Prop. Soc.* v. *Pawlet,* 4 Pet. 506; *Blight's Lessee* v. *Rochester,* 5 Cond. R. 340; *Griswold* v. *Butler,* 3 Conn. 228, 245; Rev. St. 305. The land claimed, having been conveyed by a private individual, does not come within the excepting statute of Nov. 11, 1802; Sl. St. 292; State Papers 503; Hasw. St. 158, 208; Sl. St. 195–6, 289, 586; *Univ. of Vt.* v. *Reynolds,* 3 Vt. 556; 1 Bl. Com. 87.

VII. But, after the acknowledged payment to the plaintiffs of the consideration money for the land, and their entire acquiscence and that of the *cestui qui trust* in the substitution of the interest of that money for the rents and profits, and in the adverse possession of the defendants and their grantors for forty five years, the court ought to *presume* a title in the defendants, if they should be of opinion that none had been shown. *Eldridge* v. *Knott* Cowp. 215; *Univ. of Vt.* v. *Reynolds,* 3 Vt. 558; 2 Stephen's N..P. 1559, and cases cited. *Schauber* v. *Jackson,* 2 Wend. 13; *Rex.* v. *Montague,* 10 E. C. L. 413.

The opinion of the court was delivered by

REDFIELD, J. This is ejectment for certain lands, which originally formed a portion of the right granted to the first settled minister in the town of Pownal. It would seem, from the proceedings of the town in relation to this right, that as early as the year 1789 they distinctly, by vote, recognized the right of Elder Benjamin Gardner to this land in fee, and received from him a deed of gift to the selectmen of the town, and their successors in office, of the right for the "use and support of a gospel minister or ministers" in the town. This deed is expressed to be for the benefit of "the town forever," to be "in trust," &c., and expressly refers to a vote of the town in regard to the same subject. By reference to the vote of the town, it appears the avails of the rents were to be divided among the several societies in town according to the legal voters attending or inclining to each respectively. So that the *cestui que trusts* and the trustees are virtually the same, or if not in fact the same, they are the same in law. For the trustees are, *in law,* the town, the *cestui que trusts* are the inhabitants, that is, the legal voters in the town.

By looking into the proceedings of the town subsequently, in re-

gard to this land, it seems that, in the year 1797, the selectmen, Benjamin Gardner being one of them, called a special meeting, to see if the town would agree to sell the minister's right, &c. The town voted to sell under the supervision of a committee of five, of which Benjamin Gardner was one, and directed the selectmen to deed, which they did. Since that time the land has been holden adversely to the claims of all, and without any objection on the part of any one. This action of ejectment is brought in the name of the town to recover the land in violation of their contract.

In order for the plaintiffs to recover we must hold the entire proceedings of the town, in regard to the sale, absolutely void for all purposes. There are various reasons why we are not prepared to do this.

1. The trustee, in the case of real estate, has always the legal estate, so that he may sustain ejectment for the same, even against his *cestui que trust. Beach* v. *Beach,* 14 Vt. 28.

2. Having the legal estate, the trustee can convey it to any one he sees fit. In such cases the trustee may convey as follows:

1. If his *cestui que trust* is *sui juris,* he may make a legal conveyance by his consent; — if he is not *sui juris,* then the trustee may do it without such consent; for, says Mr. Justice Story, " it is frequently necessary to his interests that the trustees should possess the power to exchange the land for money, and *vice versa,* and in such case the acts of the trustee seem to be justifiable." " 2 Fonbl. Eq. b. 2, ch. 7, § 1, note (a)." 2 Story's Eq. § 978, p. 242.

2. The trustee may make the conveyance in violation of the trust, and in such case, if the person to whom he conveys is ignorant of the trust, the entire title passes to him; but if not, he takes the land incumbered with the trust, and may be held to account *as trustee.* But in *such case* he can only be called to account in a court of equity, and that by the *cestui que trust,* and not by the original trustee. 2 Story's Eq. § 976, p. 240. Co. Litt. 113 *a.* 1 Thomas' Coke 397, Butler's note. But in such case the bill must be filed within some reasonable time. *Shaver* v. *Radley,* 4 Johns. 310.

3. The trustee may convey with the consent of the *cestui que trust* and the *founder of the trust,* or *charity,* in all cases. This is of the very nature of all trusts, or charities, and, indeed, of all contracts, that the scheme may be modified by the consent of all con-

cerned. And it must also follow that this assent may be either express, or implied. This implication may result either from circumstances or from lapse of time, or from both.

1. In the present case we have the express assent of the founder of the charity, and of the *cestui que trusts*, in the agency they had in bringing about the change of the land into money.

2. We have ample ground of presuming such consent from lapse of time. A modification of the scheme of a charity, in so unimportant a particular as the form of the investment, ought always to be presumed, when it was possible, and has long been acquiesced in. If the modification goes to the very foundation and object of the charity, it ought not, perhaps, to be presumed, unless upon the strongest ground, and then only upon such grounds as existed during the life of the founder; but one so unimportant as the present, and one so necessary to the security of all concerned, ought to be presumed after the lapse of time, even if there were nothing else upon which to rest the presumption. 2 Story's Eq. 736, and note and cases cited. *Kane* v. *Bloodgood*, 7 Johns. Ch. 90.

In every view of the case, both in law and equity, there is no ground of maintaining any suit whatever against the defendants. We have been induced to go thus, at length, into this claim, in consideration of the importance of the question and the labor bestowed upon it at the bar, both in preparation and argument, and the necessity that the question should be decided at some time. And this we have done, notwithstanding it is obvious that this action of ejectment might have been disposed of in a more summary way. If the *cestui que trust* ever had, or could have had, any remedy against this defendant, which it is clear they could not under the circumstances of this case, it must have been in equity, and not at law. Judgment affirmed.