Baker and another vs. Baker, Executor.

BAKER and another vs. BAKER, Executor.

*March 7 — March 24, 1881.*

VACATING JUDGMENT: *(1) At subsequent term.*
WILLS: EXECUTORS. *(2) The word "stock" in a will construed. (3) When executor estopped to deny liability as such. When chargeable with interest.*
COUNTY COURT. *(4) When order takes effect, though unsigned and unrecorded. (5) Power to diminish widow's allowance pending settlement of estate.*
COSTS: *(6) Ordered paid out of estate.*

1. While, as a general rule, the circuit court cannot vacate or modify a judgment after the term at which it is rendered, except as provided by statute, yet where a motion to modify was made promptly at the term of judgment, and the hearing thereof was, by consent of counsel on both sides, adjourned to the next term, and it appeared that the findings had been signed and judgment rendered under a mistaken belief of the judge that such findings, drawn up by the counsel of one party, had been submitted to and approved by the opposing counsel: *Held*, that there was no error in vacating the judgment.

2. A will devises and bequeaths to A. a certain farm and "all the stock, grain and farming utensils" that may be thereon at the time of the testator's death, and to B. another farm and "all the stock and farming

utensils " that may be thereon at the time of such death; and the residuary clause gives and devises to B. all the testator's property, real and personal, not before disposed of. *Held*, that the word "stock," in the bequest to A., must be construed to mean only the domestic *animals* raised and used upon the farm, and not to include wool which at the time of the testator's death was stored, for sale, in the dwelling house on A.'s farm, and had been clipped the previous year from sheep usually kept upon said farm.

3. The will gave the testator's wife the income of one-third of his real property during her life; and B., one of the devisees, in his final account *as executor*, rendered after the lapse of several years, charged himself, in favor of the widow, with one-third of the rental value of the land devised to him. *Held*,

(1) That he could not then object to an order determining the amount justly due the widow from the rental value of said land, and requiring him to pay the same *as executor*.

(2) That interest should have been allowed against him upon all sums so due the widow, from the time they became payable under the will, until the date of such order.

4. On hearing an application for an allowance for the widow's support pending settlement of the estate, the county judge announced that he would allow her a certain sum per month; and by his direction his clerk then and there reduced the decision to writing in the form of an order; but the judge neglected to sign it, and it was folded and indorsed as "filed," etc., with a blank for his signature. *Held*, that the order took effect, though not signed or entered of record as the statute requires.

5. Upon its being shown that the condition of the estate or of the family has changed since an order was made allowing the widow a certain sum at certain intervals for her support pending the settlement of the estate, the county judge may make an order diminishing such allowance *for the future* at his discretion. But where, without proof of any such change, the judge set aside an order allowing a certain sum monthly until the estate should be settled, and made another order allowing a gross sum, which would not only greatly diminish the allowance but have a retroactive effect: *Held*, that it was an abuse of discretion.

6. In an action between the persons interested in an estate as executor and legatees, involving the questions here stated, the costs of the parties are directed to be paid out of the estate.

APPEAL from the Circuit Court for *Racine* County.

William Baker died in March, 1876, testate. On appeal from a decision of the county court construing the will and

settling the estate, the circuit court rendered a judgment at the October term, 1879. Afterwards, during the same term, *James Baker*, the executor, moved to set aside the judge's findings filed in the cause, and vacate the judgment, and that certain other findings be filed, and a certain other judgment rendered. After the day fixed by law for the commencement of the March term, 1880, viz., on the 11th of May of that year, the court granted said motion, caused new or amended findings to be filed, and rendered a new or amended judgment. From this judgment, and also from that rendered at the previous term, the present appeal was taken by *Mary Ann Baker*, the widow of said William Baker, and *George W. Baker*, one of his children and devisees.

Other facts are sufficiently stated in the opinion.

For the appellants there were briefs by *Fish & Dodge*, and oral argument by *Mr. Fish:*

1. The circuit court had no power at any subsequent term to vacate or modify the judgment entered at the October term, 1879. *Loomis v. Rice*, 37 Wis., 262; *Ætna Life Insurance Co. v. McCormick*, 20 id., 265. This case is not within any of the exceptions to the rule, stated in *Scheer v. Keown*, 34 Wis., 349. The errors to be corrected, if any, were those of the judge, and not of the clerks or other officers of the court. 2. The circuit court erred in its construction of the will. The wool upon the farm devised to *Geo. W. Baker* passed to such devisee. The general intent, as gathered from the whole instrument, is of great weight in construing particular clauses or phrases in a will. *Hoppock v. Tucker*, 59 N. Y., 202. And words will be held to have been used in their popular or technical sense, according to the general intention of the testator gathered from the context and the circumstances in which he was placed. 1 Redf. on Wills, 427, Rule 17, n. 1; id., 431, Rule 13. The word, "stock," in its primary sense in agriculture, includes not only animals, but the products of the farm, and property purchased and taken upon the farm for its im-

provement and cultivation.   Webster's Dict., " Stock;" *Cox v. Godsalve*, 6 East, 604, note; *West v. Moore*, 8 id., 339; 1 Redf. on Wills, 441, 442; *Willis v. Curtois*, 1 Beav., 189; *Whitfield v. Langdale*, 15 Eng. (Moak), 649; *Morrice v. Aylmer*, 11 id., 503; *S. C.*, 14 id., 103; Broom's Leg. Max., 648; 2 Redf. on Wills, 108, 111-123.   This interpretation of the will seems necessary in order to carry out the scheme of the testator.   *Wolfe v. Van Nostrand*, 2 N. Y., 436; *Hoppock v. Tucker*, 59 id., 202.   3. The decision of the county court, as to the allowance to the widow, made Nov. 17, 1877, was a binding judgment without the signature of the judge to the order.   Freeman on Judg., §§ 38, 39; *Winans v. Dunham*, 5 Wend., 47; *Bates v. Delavan*, 5 Paige, 303; *Fish v. Emerson*, 44 N. Y., 376; *Butler v. Lee*, 3 Keyes, 70.   After it was made, the widow had a vested interest in the funds, and the court could not take away or reduce the allowance.   *Hale v. Hale*, 1 Gray, 518; *Petee v. Wilmarth*, 5 Allen, 144; 3 Redf. on Wills, 124.   The order of March 18, 1878, was therefore invalid.   The court had no power to vacate or correct the previous order unless it was irregularly made or procured by fraud.   *In re Fisher*, 15 Wis., 511; *Griffith v. Frazier*, 8 Cranch, 9, 25.   4. The circuit court erred in not allowing to *Mrs. Baker* interest upon her annual legacy of one-third of the income of the farm occupied by the respondent.   Such legacy must draw interest from the time it was payable.   2 Redf. on Wills, 364, 367, 471; *Pollard v. Pollard*, 1 Allen, 490; *Williamson v. Williamson*, 6 Paige, 298; *Wood v. Penoyre*, 13 Ves. Jr., 326; *Crain v. Barnes*, 1 Md. Ch. Dec., 151; *Pearson v. Pearson*, 1 Sch. & Lefr., 10; *Martin v. Martin*, 6 Watts, 67; *Clark v. Sewell*, 3 Atk., 96; *Kent v. Dunham*, 106 Mass., 586.

For the respondent there were briefs by *Henry T. Fuller* and *Wm. P. Lynde*, and oral argument by *Mr. Lynde*.   They argued, among other things:   1. The common-law rule which precludes courts from reviewing their judgments at a term

subsequent to that of entry, applies only to *final* judgments. The judgment entered at the October term, 1879, could not be considered final. It was entered under a misapprehension, and a motion was promptly made at the same term for its correction, not upon the minutes, but upon affidavits showing the mistake. Such motion was by consent continued until the next term. After full hearing the court vacated the first findings and judgment, on the ground of inadvertence and mistake and that they did not embody the decision as announced. This the court had full power to do. *Wyman v. Buckstaff*, 24 Wis., 479; *Hill v. Hoover*, 5 id., 388 and note; Freeman on Judg., 69–74; *Scheer v. Keown*, 34 Wis., 353; *Durning v. Burkhardt*, id., 588; *Pugh v. Irish*, 43 Ind., 415. See also *McKnight v. Livingston*, 46 Wis., 360; *Memphis v. Brown*, 4 Otto, 717; *Brockett v. Brockett*, 2 How., 240; *Seymour v. Supervisors*, 40 Wis., 62; *McLaren v. Kehlor*, 22 id., 300; *Stewart v. Agnew*, 1 Shaw, App. Cas., 413; *White v. Tommey*, 4 H. L. C., 326. 2. According to the common and approved usage of language, the word "stock," in connection with the devise of a farm, as here used, primarily means live stock. And it is evident from the whole instrument that such a construction of the will would carry out the intention of the testator. *Graham v. Davidson*, 2 Dev. & Batt. Eq., 157, 171; *Vaisey v. Reynolds*, 5 Russ., 12, criticising and explaining *West v. Moore*, 8 East, 339, and *Cox v. Godsalve*, 6 id., 603, note; *Cromer v. Pinckney*, 3 Barb. Ch., 475; Broom's Leg. Max. (5th. Am. ed.), 393. 3. The alleged order of the county court, fixing the allowance of the widow, Nov. 17, 1877, was of no validity. It did not appear upon the records of that court. Such record, if defective, might have been amended in and by that court, upon a proper application and showing; but no other court has the power. R. S. 1858, ch. 117, sec. 61; Tay. Stats., ch. 117, § 88; R. S., secs. 4046–7; Rules of County Courts, XVI; Freeman on Judg., 63, 64; *Rogers v. Hœnig*, 46 Wis., 361. The evidence on this point in the

circuit court was, therefore, inadmissible. But such evidence failed to show that such an order was made. It showed, at most, that the county judge promised to make the order. Records of a court cannot be made in this way. *Smith v. State*, 12 Cent. L. J., 115; *Rogers v. Hœnig, supra*. Even if this alleged order was effectual, it was still subject to modification by the court that made it, at any time before the payment of money under it. *In re Fisher*, 15 Wis., 521.

. COLE, C. J. 1. In this case there are two appeals: one from the judgment of the October term, entered December 23, 1879; the other from a judgment of the subsequent term, entered May 11, 1880. The latter judgment purports to vacate the former, and, if it was effectual for that purpose, the appeal from the first must necessarily fail. It is claimed by the learned counsel for the appellants, that the court lost all power over the judgment entered at the October term, when that term closed, and could not vacate it at a subsequent term for any error of law or fact. This, undoubtedly, is the general rule — one which has often been affirmed by this court in the cases which have come before it. But the rule is not absolutely inflexible, and has its exceptions. The facts of this case take it out of the general rule. It is recited in the record that soon after the judgment of the October term was entered, and at that term, the counsel for the respondent moved, upon affidavits, to modify the findings and judgment. It appears that the hearing of the motion to modify was, by consent of counsel for both parties, adjourned to the third of May, 1880, which was of the next term. The motion was then taken up, argued, considered and decided. While this court adheres to the general rule that a judgment cannot be vacated after the term unless a case is made under the statute, yet it is not inclined to go so far as to hold that, if a motion to amend or vacate is made at the same term, and that motion is, by consent of counsel, continued to a subsequent term, the

court cannot then consider and decide it with like effect as if it had decided it at the first term. Nor do we see any sufficient reason for denying the power of the court to vacate or change its judgment at a subsequent term under such circumstances. Without dwelling upon the statements contained in the affidavits upon which the motion in this case was founded, it may be observed that they set forth facts which rendered it quite proper for the court to review the first findings, which were drawn up by appellants' counsel. It satisfactorily appears that the court, when it signed those findings, was under the impression that they had been submitted to the counsel on the other side, and approved. But this was a mistake, for which no one was entirely responsible. We therefore think the circuit court was warranted in reviewing its action in that regard, having the power to do so. The two judgments are different in terms, but as, in our view, the first was completely set aside by the second, the latter alone will be considered.

2. The first question presented is in regard to the wool which was in the dwelling-house of the deceased at the time of his death, and which both the probate and circuit courts decided passed to *James Baker* under the will. That construction is vigorously assailed by the learned counsel for the appellants, but in our judgment it is the correct one. In the construction of the will but little aid can be derived from extrinsic sources. The intention of the testator, as gathered from the whole instrument, of course must prevail in the interpretation of particular clauses. This rule is elementary. In the third clause the testator devises and bequeaths to his son *George W. Baker* his home farm, " consisting of about 270 acres of land, and all the stock, grain and farming utensils that may be on said farm at the time " of his decease. In the fourth clause he devises and bequeaths to his son *James Baker* the Yorkville farm, " and all the stock and farming utensils that may be on said farm at the time of " his death. By the residuary clause he gives and devises all his property,

both real and personal, not before disposed of, to *James Baker*. These are the only clauses in the will which have a bearing upon the question we are considering. At the death of the testator there was a large quantity of personal property on each farm, among which was a flock of sheep, which at the time was on the farm devised to *James Baker*. It appeared that these sheep had been driven from one farm to the other for the purpose of pasturage, and feeding out the hay and fodder which had accumulated on each of said farms. The sheep had been principally kept on the home farm, and always sheared there. When the testator died, there was on the home farm, in the dwelling-house thereon, a clip of wool from said flock of sheep for the year previous; also upon each farm large quantities of hay, grain and other farm products.

Now it is insisted by the appellants' counsel, that the word "*stock*," as used in the third clause, was intended to cover and should be construed to include this wool thus stored in the dwelling-house, as against the operation of the residuary clause. He says this term "*stock*," in its primary sense, in agriculture, includes not only animals but the products of the farm, property purchased and taken upon the farm for its improvement and cultivation. Consequently, he argues, this wool which was on the farm, and was a product of the farm not yet marketed, passed with the other personal property, under the word "*stock*." We think, however, that this word, in the connection in which it is used, cannot have this enlarged meaning. Possibly it may not be restricted to the animals on the farm, but it could not include all the personal property thereon; if it did, the subsequent words "*grain*" and "*farming utensils*," would be unnecessary and superfluous. In the devise to *James Baker* it will be noticed that the word "*grain*" is omitted. Now, as was pointed out by the learned counsel for the respondents, it might with more reason be claimed in his case, in view of the authorities cited, that the words "*all the stock*" included dead stock, so called — produce stored for use;.

and implements of husbandry.   But we think in both clauses of the will, certainly in the third clause, the word "*stock*" is used in a popular sense, as including the domestic animals, cattle, etc., raised and used upon a farm.   It seems to us it has substantially the same meaning there the court gave to it in *Graham, Adm'r, v. Davidson*, 2 Dev. & Batt. (N. C. Eq.), 155, 172, where Judge GASTON said: "The word 'stock,' used in connection with farm or land, has a settled meaning, whereby it is restricted to the animals which are used with, supported by or raised upon it."   *Vaisey v. Reynolds*, 5 Russ., 12, and cases referred to in the notes, are quite instructive on this point.   We feel confident in assuming that no farmer, proposing to sell his farm with all the stock, grain and farming utensils thereon, would suppose his offer included a clip of wool stored in his house and held for sale.   Therefore, upon this point, we hold with the court below, that the wool in question passed to *James Baker* under the residuary clause.

3. The next matter in contention relates to the rental value of the farm devised to *James Baker*.   The will gave *Mrs. Baker*, during life, the use, income and profit of one-third of the real estate of which the testator might be seized at his death.   In his account the executor charged himself at the rate of two dollars per acre, annually, as a reasonable rent for the Yorkville farm, which was devised to him.   The circuit court fixed the rent at that rate, and ordered the executor to pay *Mrs. Baker* one-third of the rent of the farm occupied by him for four seasons.   Complaint is made that the rent of the farm should have been higher, and there is considerable testimony showing that it is fairly worth $2.25 to $2.50 per acre a year. We are not disposed to differ with the circuit court as to the value of the rental, but we see no good reason for denying *Mrs. Baker* interest on her share from the time it became due and payable, as was provided for in the first judgment. It is insisted that in this proceeding to settle and distribute the estate devised, the court had no jurisdiction, against the

executor's objection to the introduction of testimony as to the value of the rental, to ascertain such value and award judgment therefor.    It is said that the bequest of the one-third of the use, income and profit was in the nature of a specific legacy charged upon the land, and took effect on the decease of the testator; and therefore the devisees became and were personally responsible for the payment of this legacy.    But it will be remembered that the executor in his account charged himself with this rent.    He did not claim that he had been in possession as devisee, and that the one-third rent was a debt in favor of *Mrs. Baker* for which he was personally liable. Having included the rent in his account; having treated it as a matter connected with the estate, which he was bound to settle and adjust in his trust capacity; having, in fact, invoked the jurisdiction of the court to examine into it,— he ought not now to be permitted  to say that the court had no right to inquire into and determine .the matter, whatever objection there might otherwise have been to the court's doing so.    He has clearly waived all  objection by the course he has taken in reference to the matter as executor.

4. The next question concerns the amount which should be allowed *Mrs. Baker* during the settlement of the estate.    It appears that by an order dated August 31, 1876, the probate court allowed for her support and maintenance $600 for one year from March 23, 1876.    On the 13th of November, 1877, *Mrs. Baker* applied by petition to that court for an allowance of $1,000 per annum until the estate was settled.    On the hearing of this application, the probate court orally decided and announced that he would allow the widow $50  per month until the estate was settled, and  thereupon  directed his clerk to reduce his decision to writing, which was then and there done in the form of an order.    This order the probate judge neglected to sign, but it was folded and indorsed as follows: "Filed November 17, 1877.  —— County Judge."    On the 18th of March, 1878, the probate court made a further order,

in terms revoking all previous orders of allowance, and providing that *Mrs. Baker* should receive only the sum of $800 during the settlement of the estate, in lieu of all other allowances. A question is made as to the validity of the order of November 17, 1877. The testimony is most clear, positive and conclusive that this order was actually made by the probate court, but through inadvertence was not signed. But we apprehend that the failure to sign did not defeat the order; that it took effect as the decision of the court, notwithstanding that omission. The judicial act performed was in deciding upon the application and announcing such decision. True, the county court is a court of record, having a seal, and each judge of said court is required to keep a true and fair record of each order, sentence and judgment of the court. 2 Tay. Stats., ch. 117, § 2. Properly, the order in question should have been entered of record. But the failure to do this, or to sign the order, did not have the effect to nullify or destroy the decision which was actually made. We wish it, however, distinctly understood, that to our minds the parol evidence is entirely conclusive as to the making of the order. The only question is, whether it was absolutely essential to its validity that it should have been entered of record, or signed by the probate judge. And we are inclined to think it was not. There is no possible room to doubt that an order was made and announced allowing the widow $50 per month from the 23d day of March, 1877, to the final settlement of the estate.

But, conceding this order to be effectual, still the counsel for the executor claims that it was subject to modification by the court that made it, at any time before the payment of money under it. *In re Fisher*, 15 Wis., 512, is cited in support of this position. That case does decide that the county court, sitting as a court of probate, may at any time, in furtherance of justice, revoke an order which has been irregularly made or procured by fraud. But that decision does not come up to this case. There is no pretense here that there

was any fraud in procuring the order or irregularity in making it. See *Betts v. Shotton*, 27 Wis., 667, where the case in the 15 Wis. is commented on. And for the probate court to modify and set aside its order granting an allowance to the widow for her support during the settlement of the estate, without any showing that the condition of the estate had changed, giving such order a retroactive effect, would work great hardship and injustice in many cases. The widow might make engagements, contract debts or graduate her expenses upon the faith of an order granting her allowance, expecting the money would be paid under it. Upon its being shown that the condition of the estate had changed, or that the situation and circumstances of the family had changed, the probate court, as to the future, might diminish the allowance in its discretion; but in this case it was an abuse of discretion to make the order of March 18, 1878, revoking all previous orders on the subject of allowance.

The costs of the respective parties should be paid out of the estate. *In re Jackman Will*, 26 Wis., 143, 364.

*By the Court.*— The appeal from the judgment dated December 23, 1879, is dismissed. The judgment of May 11, 1880, is reversed, and the cause is remanded with directions to enter a verdict in accordance with this decision.