Bristol Savings Bank v. C. B. Judd, *et al.*, and The World Publishing Company, Appellent.

**Agency:** *Power of agent to take other than cash for debt.* Where an agent for a newspaper published by a corporation was authorized to look after its circulation and collect debts in a certain city, and he accepted in payment of a sum due the paper, certain real estate, subject to a mortgage, agreeing that the corporation should assume the mortgage, such a_reement did not bind the corporation; it not appearing that the agent had the right to take anything but money in satisfaction of debts, and he having no authority to contract an indebtedness against the corporation.

**RATIFICATION.** An agent for a corporation, without authority, took certain real estate in satisfaction of a debt to the corporation, and agreed that it should assume the mortgage. The deed, which recited the agreement, never reached the corporation or any of its officers, and, though it was recorded, it was never shown by whom; and for about a year and a half the agent rented the real estate, receiving the rents therefor. It was shown that he made reports to the company of items of expense connected with the property, and reported the rents, without clear explanation. *Held,* that there was not a ratification of the agent's act in assuming the mortgage.

**Assigned Estates:** ORDER OF SALE: *Validity.* Code 1873, section 2127, provides that no sale of real estate belonging to an assigned estate shall be made without notice published as in the case of sale of real estate on execution, unless the court otherwise direct and order. .Code, section 3846, requires the orders of a judge in vacation to be filed and entered by the clerk in the same manner as orders made in the term. *Held.*

that an order for sale of real estate by an assignee, without notice, is of no validity unless made by a judge sitting as a court, and entered of record.

BEST EVIDENCE OF ORDER.  While orders made by a judge in vacation may be proved without the record, the record is the best evidence of the order; and when the order is not recorded strict proof should be exacted, if admissible at all.

*Appeal from Pottawattamie District Court.—HON. WAL-TER I. SMITH, Judge.*

TUESDAY, FEBRUARY 11, 1902.

ON June 24, 1891, C. B. Judd executed to the Kimball-Champ Investment Company his note for $650.  This was the balance due on a previous indebtedness, for which it was given in renewal, secured by a mortgage on lot 6 in block 3, and lots 2 and 8 in block 5, in an addition to Council Bluffs known as the "Twin City Place."  Thereafter the note and mortgage were acquired by the plaintiff.  The mortgaged property subsequently passed to W. H. Knepler as assignee of the Judd-Wells Company, and it is alleged in the petition that from him the World Publishing Company purchased it, and, as a part of the consideration, assumed and agreed to pay said mortgage.  Judgment and a decree of foreclosure were demanded against said company.  Its answer is a general denial, and an averment that the agreement contained in the deed, if made, was *ultra vires.* Judgment and decree were entered as prayed, and the company appeals.—*Reversed.*

*Hall & McCulloch* and *Finley Burke* and *C. B. Aitchinson* for appellant.

*Sims & Blanchard* for appellee.

LADD, C. J.—The ownership of the mortgage by plaintiff, and of lots covered thereby, by the assignee of the Judd-Wells Company, is ~ ' ~~estioned. A deed thereof, purport-

ing to be from the assignee to the World Publishing Company, containing the clause that the latter "assumes the payment of all incumbrances 'of every kind against said prem.- ises," dated August 1, 1891, was duly recorded two days later. It is admitted that no order appears of record for the sale of this property by the assignee, and there is no pretense that any notice thereof was published. Section 2127 of the Code, of 1873, then in force, reads: "Any assignee * * * * shall have as full power and authority to dispose of all estate, real and personal, assigned, as the debtor had at the time of the assignment, * * * but no sale of real estate belonging to said estate shall be made without notice, published as in case of sales of real estate on execution, unless the court shall order and direct otherwise." It will be observed that the order dispensing with notice was to be by the court, and, of course, a judge not sitting as a court was without authority to make it. *Prosser v. Prosser,* 64 Iowa, 378. Further, by section 3784 of the Code, which is a re-enactment of the law as it formerly stood, "all judgments and orders must be entered on the record," and ordinarily the record is the best and only proof of their existence. *Callanan v. Vortruba,* 104 Iowa, 672; *Christie v. Insurance Co.,* 111 Iowa, 177. Some courts even in the absence of statutory requirements, have held that an order of court, to be of any validity, must be entered of record; and certainly, under the language of the section quoted, such orders should appear of record in order to be accepted as having been made by the court. See *Medlin v. Platte County,* 8 Mo. 235, (40 Am. Dec. 135); *Partridge v. Morgenthau,* 157 Ill. 395, (42 N. E. Rep. 74); 14 Enc. Pl. and Prac. 341. Even the orders of a judge in vacation are to be forthwith filed and "entered by the clerk in the journal of the court in the same manner as orders made in the term." Section 3846, Code. The evident purpose to be attained is not only to preserve by putting in enduring form what has been done, but also, as the record is to be read and approved, to ascertain definitely and declare precisely what

orders and directions have been made and acted on.  Possibly it would be too strict a construction of the statutes to hold that orders made by a judge in vacation may only be proven by the record, but we have no hesitation in saying even then that the record is the best evidence of such orders, and when not so entered very strict proof, if admissible at all, should be exacted. *Baker v. Baker,* 51 Wis. 538, ( 8 N. W. Rep. 289).

II.  An application for an order for the sale of the lots dated before, but filed with the clerk six days after, the deed was signed, and three days after it was recorded, and also an alleged order of the judge found with it, were offered in evidence.  Those were entirely immaterial.  As already noted, the order could only have been made by the court, and to be of any validity, must have been entered of record.

III.  It does not follow, however, that, because a deed is executed by an assignee without notice or the order of the court, no title passes to the grantee.  By virtue of the assignment the title vested in the assignee.  Under the section previously quoted, he had the power to sell.  He may have exercised that power, but not in the manner directed by statute.  Under such circumstances, the purchaser might refuse to take the land.  *Ramsay v. Hersker,* 153 Pa. St. 480, (26 Atl. Rep. 443).  But it would not seem that the mere failure of the trustee to give notice, or perform some other condition pertaining to the mere manner of executing the trust would render the conveyance void.  It is the general rule that notwithstanding such omissions, even though these amount to a breach of the trust, a deed by the trustee having the power to sell will pass at least the naked legal title.  *Gale v. Mensing,* 20 Mo. 461, (64 Am. Dec. 197) ; *Harris v. Harris,* 6 Munf. (Va.) 367; *Walton v. Follansbee,* 131 Ill. 147 (23 N. E. Rep. 332) ; *Pownal v. Myers,* 16 Vt. 408; *Minuse v. Cox,* 5 Johns. Ch. 441 (9 Am. Dec. 313) ; *Taylor v. Benham,* 5 How. 272, (12 L. Ed. 130) ; Burrill, Assignment, section, 370.

But conceding, not deciding, that the deed, if delivered, would have passed title, we reach the defendant's contention that it never purchased the property, and has not received the deed. It was a corporation organized in Nebraska for the purpose of publishing a newspaper. In this was printed what was known as the "Council Bluffs Department," in the interest of which an office was maintained in Council Bluffs. This was in charge of one Grimm, who looked after the circulation of the paper, its local advertisements, and the collection of amounts due for these. In the absence of anything to the contrary, it must be assumed that he was limited to receiving money for the debts due the company. True, he had talked with the defendant's manager of taking two lots, unincumbered, in Twin City Place, in satisfaction of an indebtedness owing by the Judd-Wells Company, but this arrangement was never carried out. Afterwards that company made the assignment, and Grimm, without any express authority agreed with the assignee to take the three lots in controversy, subject to the mortgage, which the defendant was to assume, in satisfaction of its debt of about $600, and pay some difference in cash. As said, the defendant's business was that of publishing a paper, and it cannot well be claimed that such an arrangement was within the scope of the authority of an agent appointed to aid in carrying on such business. First, it does not appear that he had the right to take anything but cash in satisfaction of debts owing the defendant; and, second, even if he had, he was without authority to contract an indebtedness against it, by agreeing to pay the outstanding mortgage owned by plaintiff. It is urged, however, that, even though the transaction was without authority, the defendant subsequently ratified it. Grimm took possession of the lots, rented them for about a year, and received some $12 more than he expended on them. But the deed never reached the company or any of

its officers. True, it was recorded, but by whom is not shown. Delivery is not to be presumed from the mere recording, when this has not been procured by one of the parties, and especially when the deed had not been executed by the assignee in the manner pointed out by statute. The officers of the defendant did not learn of its existence until this suit was begun. While Grimm reported to the secretary of the company the items of expense and of rent, this was done without explanation or any information as to what these were. The company sublet a part of its office, and all such items were supposed to refer to matters relating to the office. Having no knowledge whatever of the transaction, there could have been no ratification of what Grimm did. The record conclusively shows that his action in taking the deed for the lots containing the assumption of the payment of the mortgage was unauthorized and never ratified.

It follows that the judgment against defendant was erroneous, and it is REVERSED.