.Tucker and others vs. Whittlesey and others.

TUCKER and others, Respondents, vs. WHITTLESEY and others, Appellants.

*February 4 — April 25, 1889.*

EQUITY: PARTITION OF LAND: TAX TITLES: TOWN SITES. *(1-3) Commencement of action for partition: Order for appearance: Affidavit of nonresidence. (4) Fraud avoiding judgment: Suppression of facts. (5) Estimating values under prior agreement. (6) Judgment for taxes paid. (7) Void tax deed: Lots sold together. (8) Division of county: Execution of trust under patent to county judge. (9) Estoppel: Title from common source. (10) Minors: Redemption from tax sales not a condition precedent to action.*

1. Under sec. 11, ch. 142, Tay. Stats., an action for partition against nonresident defendants could be commenced, without summons, by publication of the prescribed order for appearance.

2. Such order for appearance might be made before the complaint was . filed.

3. The affidavit of nonresidence of the defendants might be made by but one of several plaintiffs.

4. In an action for partition against the widow and minor heirs of his deceased cotenant the suppression by the plaintiff of the fact, un-.

known to the defendants, that he had procured from such cotenant a conveyance of a part of the common property under an agreement to convey to him other parts of equal value, is a fraud which will avoid the judgment.

5. Upon setting aside such judgment and making a new partition, the value of the portion so conveyed to the plaintiff and of the portion to be allowed to the defendants as the equivalent thereof should be estimated as of the time of said agreement.

6. In an action for partition the plaintiff cannot have a judgment for the amount of taxes alleged to have been paid by him for the defendants.

7. A tax deed which shows upon its face that a large number of lots and blocks were sold together for a gross sum is void.

8. A town site having been patented in trust (under sec. 2387, R. S. of U. S.) to the county judge, the judge of a new county formed out of a part of the old one and embracing such town site is the proper officer to execute the trust.

9. Where both parties derive their title from the same source neither can question the validity of such common title.

10. In an action by minors to establish their title and for a partition of lands which had been sold for taxes, the relief was asked on condition of paying into court the amount necessary to redeem their interest from the tax sales, and before judgment such amount was actually paid into the office of the county clerk. *Held*, that it was not necessary that the plaintiffs should have redeemed the lands before commencing the action.

APPEAL from the Circuit Court for *Ashland* County. Action by the widow and minor heirs of Charles C. Tucker, against *Lucy M. Whittlesey*, widow of Asaph Whittlesey, and others. The complaint prays that an amicable partition of certain lots in the village of Ashland made by said Tucker and Whittlesey in December, 1873, be adjudged to be a binding partition and division of said property, and that the rights of the minor plaintiffs therein be established pursuant to said partition, subject to the dower interest of the plaintiff widow, upon payment into court of the amount necessary to redeem any of said lots which had been sold for nonpayment of taxes and in discharge of all legal claims against or upon the same on account of taxes, and that all

claims based upon tax deeds of any of said lots be set aside and annulled. It is further prayed that proceedings for a partition of said property commenced by Asaph Whittlesey and *Lucy M. Whittlesey* in October, 1876, and which resulted in a judgment of partition in July, 1877, be set aside and adjudged to be void, and that an execution sale under said judgment and the sheriff's deed thereon be also set aside and adjudged to be void.

The lands in question had been patented by the United States to Schuyler Goff, as judge of La Pointe county, under the town-site law (sec. 2387, R. S. of U. S.), and had been conveyed by John W. Bell, county judge of Ashland county, to said Asaph Whittlesey and Charles C. Tucker. See *Whittlesey v. Hoppenyan*, 72 Wis. 141. Other facts will appear from the opinion. The defendants appeal from a judgment in favor of the plaintiffs.

For the appellants there were briefs by *Tomkins, Merrills & Smith*, and oral argument by *W. M. Tomkins.*

*G. W. Hazelton*, attorney, and *T. L. Kennan*, of counsel, for the respondents.

The following opinion was filed February 19, 1889:

Cole, C. J. The partition made at the July term of the circuit court of Ashland county, in 1877, is directly in the way of the plaintiffs having the relief asked in this case. That judgment attempts to make partition of the real estate between the parties, and, unless it is invalid for some reason, is conclusive as to their rights. It is insisted by the counsel for the respondents that the proceedings in that action are wholly void for several alleged defects.

First, it is said that that partition suit was commenced without summons, which it is insisted was essential under the statute. It appears that all the defendants in that case were nonresidents, and jurisdiction was acquired by publication of the order prescribed in sec. 11, ch. 142, 2 Tay.

Stats. Sec. 1, ch. 124, Id., which prescribes how civil actions in courts of record shall be commenced, did not apply to this partition proceeding. *Foster v. Hammond*, 37 Wis. 185. In that case the chief justice says: "In actions of partition, service out of the state, on nonresident defendants, of the summons and complaint is unauthorized by statute, and therefore *extra judicium*. Instead of service of the summons and complaint, the statute provides for service out of the state, on nonresident defendants, of an order in the cause requiring the parties to appear and answer by a day specified in the order. This is the mode, and the only mode, provided in such cases for service on defendants out of the state." This is all the answer necessary to give to the objection that the suit should have been commenced by summons.

It is further objected that the order to publish was made before the complaint was filed, and that the court had no power to make the order under the decisions in *Anderson v. Coburn*, 27 Wis. 558, and *Cummings v. Tabor*, 61 Wis. 185. *Anderson v. Coburn* was a case of attachment against a nonresident defendant having property in this state, and jurisdiction was attempted to be acquired by publication. The court held that the statute made it an essential prerequisite to that mode of service that the complaint should be first filed. *Cummings v. Tabor* was likewise an attachment instituted under our present statute, which is somewhat different from the former one, and requires a duly verified complaint to be filed, upon which the order of publication is based. It is apparent that these decisions have no application to the partition proceeding, which is regulated, as to the mode of acquiring jurisdiction of the defendants, by the provisions of ch. 142 itself. The record in the partition suit shows that the order for the defendants to appear and answer was dated January 11, 1877, while the complaint was sworn to January 20th. It is fair to as-

sume that the complaint was not filed before it was verified, but the statute does not require it should be so filed before the order was made.

It is further said that the affidavit for the order was fatally defective because not made by both the plaintiffs in the action. The action was by Whittlesey and wife as plaintiffs, and the affidavit was by Whittlesey alone! He stated that none of the defendants resided in the state, but all were residents of the city of Washington, in the District of Columbia. Sec. 11, ch. 142, provided, where any of the parties having an interest in the lands to be partitioned resided out of the state, and such fact was made to appear to the court by an affidavit, the court was authorized to make the prescribed order, which should be served personally or by publication, as the court should designate. If the court was satisfied by the affidavit of one of the plaintiffs that the defendants were nonresidents, it was justified in making the order. On this point counsel referred to *Kane v. Rock River Canal Co.* 15 Wis. 179, and *Mecklem v. Blake,* 19 Wis. 398, which hold, where there are several plaintiffs in a partition action, the affidavit as to *unknown owners* should be made by all of them to enable the court to make the order; but this was because the owners might be unknown to one plaintiff but well known to the other plaintiffs. That is the reason of the rule there laid down. But, when one plaintiff positively states in his affidavit that the defendants are all nonresidents, this may satisfy the court of the fact as fully as though all the plaintiffs swore to it. The fact of nonresidence must of course be made to appear to the court by affidavit in the language of the statute. The order for publication seems to meet literally all the requirements of sec. 11, and must be held sufficient. The affidavit of the publisher of the designated paper shows that a proper publication of the order was made. So these objections to the proceeding, that the

court did not acquire jurisdiction in the action, are not well taken.

There is, however, a further objection taken to this judgment of partition which we think is sound and must prevail. It is said the judgment is wholly void for this reason: that Whittlesey applied to the court for partition without disclosing the fact in the complaint, or in some proper manner, that Tucker and wife, before that suit was instituted, had, at the instance of Whittlesey, joined in deeding to *Mrs. Whittlesey,* and to other parties named by Whittlesey, 11⅔ of the most valuable lots owned by them in common, on condition that other lots of equivalent value should be deeded to Tucker. The fact that such conveyances were made with the understanding or upon the condition just stated is not denied, and may be assumed as conclusively established in the case. The question, then, is, Did not the suppression of this fact in the partition suit amount to a fraud which should avoid the judgment? We think it should have that effect under the circumstances of this case. It appears that Whittlesey and Tucker were equal owners in about eighty lots in the village of Ashland. Tucker lived in Washington, D. C., and Whittlesey at Bayfield, Wisconsin. In 1873 the parties attempted to make an amicable division of these lots; Whittlesey acting for himself, and one Tate acting as attorney for Tucker, in the matter. In the division eleven lots were set off to Tucker as equivalent for those previously deeded by Tucker and wife at the instance of Whittlesey. This division was not satisfactory to Tucker, and he declined executing a deed for the lots which had been set off to Whittlesey. In March, 1876, Tucker died at Washington, leaving a widow and three minor children. In less than a year Whittlesey commenced the partition suit, stating in his complaint that he was the owner of an undivided half of the lots designated, and that the minor children of Tucker were the owners of the other undivided half, sub-

ject to the dower right of their mother; also that the children were all under the age of fourteen years, having no general guardian in this state. He demanded a judgment for a division and partition of the real estate, or, in case a partition could not be made, a sale thereof; and that out of the proceeds, after paying the costs and expenses of the action, the sum of $435.02 be paid to him for taxes which he had paid upon the children's share of the lots, and that the residue of the proceeds be divided among the owners according to their respective rights and interests therein. It may as well be stated here as anywhere that in the judgment of partition Whittlesey actually had a judgment for $435.02 claimed to have been paid for taxes, and execution was awarded. Subsequently an execution was issued, and the interests of the children in the lots set off to them in the division were sold to satisfy this judgment. The sheriff's deed was afterwards executed to the defendant *Lucy M. Whittlesey*. It is too obvious for serious argument that by concealing the fact that the heirs of Tucker were entitled, in any partition made, to have lots set off to them which should be equivalent in value to those Tucker had previously conveyed at the request of Whittlesey, the latter obtained a most inequitable advantage in the division of the common property; as much so as if he had falsely stated the extent of his interest therein. It was his plain duty by statute (sec. 4, ch. 142) to set forth truly in his complaint the rights of all persons interested in the premises, and he should have disclosed the equities of the heirs in the property under the agreement which he had made with their father. This was his duty upon principles of common honesty and fair dealing; especially was he bound to do this when invoking a court of equity for partition. It is true the widow was made a party to the partition suit, and put in an answer, but she knew nothing about this agreement that Tucker was to have lots conveyed to him

equal in value to those which he had previously conveyed at the request of Whittlesey; nor did the guardian *ad litem* have any knowledge of these facts so that he could protect the rights of the infants, as we must presume from the nature of the answer which he made on their behalf. Doubtless Whittlesey was the only party who knew all about this agreement, and he wrongfully, and, we must add, for some improper purpose, neglected to inform the infants or their guardian about it, and thus obtained an unjust advantage in the partition made. This was such a fraudulent concealment of material facts as should impeach the partition judgment in a court of equity. This court has in many cases relieved a party against a judgment at law, on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or when he was prevented from availing himself of the defense by fraud or accident or the acts of the opposite party, unmixed with negligence or fault on his part. *Stowell v. Eldred*, 26 Wis. 504; *Barber v. Rukeyser*, 39 Wis. 590; *Jilsun v. Stebbins*, 41 Wis. 235; *Hiles v. Mosher*, 44 Wis. 601,— are a few of the cases where this doctrine has been recognized. If this rule is acted on as to adults, much more rigidly should it be enforced for the protection of infants, where it appears that an undue advantage has been obtained over them by acts which amount to a fraud. Fraud, it is said, vitiates every transaction; and the partition of 1877 must therefore be set aside, in order that justice and equity may be done the infant plaintiffs.

There is the further consideration for holding that the partition of 1877 should be vacated, because the judgment in favor of the plaintiff therein for $435.02, for taxes alleged to have been paid for the Tucker heirs, is wholly unauthorized in law. Possibly the court might, under sec. 68, ch. 142, on confirming the partition had it been unob-

jectionable, have adjudged that each of the parties concerned pay to the plaintiffs a portion of the costs, but we know of no warrant or authority in law for rendering a judgment on the claim for taxes in the partition suit. That entire proceeding,— the execution sale, the sheriff's deed, and all,— must be vacated, disregarded, and fall with the judgment itself.

The right of the infant plaintiffs to redeem from the tax deeds and certificates issued on the sales of their lands for taxes is secured to them by the present and former statute in express language. See sec. 155, ch. 18, 1 Tay. Stats., and sec. 1166, R. S. 1878; *Jones v. Collins*, 16 Wis. 594, and *Karr v. Washburn*, 56 Wis. 303. Most of these tax deeds were issued after the death of Tucker, and there can be no room to doubt that as to all such deeds the right to redeem is entirely clear. There is, however, one tax deed which was issued some years before Tucker's death to Charles Whittlesey, who subsequently quitclaimed to Asaph Whittlesey. The court below found, in effect, that this tax deed was void because it appeared on the face thereof that a large number of lots and blocks were sold together in gross for a gross sum; whereas the lots should have been sold separately. The deed itself clearly warrants this conclusion of the court as to the manner the lots were sold at the tax sale, and, this being so, the deed was clearly void upon its face. Objections were likewise taken to the record of this deed, which was put in evidence, but it is unnecessary to consider these objections, since the original deed is held void for the reason just given. Consequently we hold, upon this branch of the case, that the infant plaintiffs have the right to redeem, from all tax deeds and liens, their undivided half of all lots and premises owned by their father at the time of his death.

A question is raised whether John W. Bell, county judge of Ashland county, was the legal successor of Schuyler

Goff, judge of La Pointe county, so as to execute the trust deed; but this point is settled in the affirmative by the decision in *Whittlesey v. Hoppenyan*, 72 Wis. 140.

On the part of the defendants an effort was made to prove that the premises had never been occupied as required under the town-site law; but this was not an open question so far as the defendants were concerned. Both parties derive title from the same source.

These remarks bring us to the consideration of the judgment in this case. The trial court was abundantly justified in holding upon the proof that there was an original agreement between · Whittlesey and Tucker that the former should deed to the latter lots in exchange for the 11⅔ lots of which Whittlesey had received the whole consideration. The entire amount of this consideration, as stated in the deeds offered in evidence on the part of the plaintiffs, was $1,000, which, *prima facie*, must be deemed the actual consideration. The agreement was that Tucker was to have lots of equivalent value to those which he had conveyed at Whittlesey's request. The question is, How is the value of the 11⅔ lots to be estimated,— at their present value, or their value at the time they were conveyed? We suppose the value is to be estimated at the time they were conveyed, and the value of the lots taken in exchange is to be estimated at the same time. In other words, the transaction is to be treated the same as though the parties had fully consummated it at the time. Had they done so, there can be no rational doubt as to the basis upon which they would have proceeded and executed their agreement. The court below, however, proceeded to ascertain the present value of the 11⅔ lots, and then set off from the lots belonging to the defendant *Lucy M. Whittlesey* enough lots at their present value to balance the account. On this basis all the lots of the defendant *Lucy M. Whittlesey* were adjudged to the plaintiffs, leaving a shortage of more than $10,000,

while the total consideration received by Whittlesey for the
11⅔ lots, as we have said, was $1,000. It seems to us no
discussion is required to show that the court below pro-
ceeded upon a false basis, and consequently arrived at an
erroneous and improper result. The value of the lots set
off to the plaintiffs must be ascertained as above indicated,
and the value of the 11⅔ lots ascertained in the same way.
These remarks dispose of all the material questions in the
case.

 *By the Court.*— The judgment of the circuit court is re-
versed, and the cause remanded with directions to make a
partition of the property according to this opinion.

 Upon a motion for a rehearing there was a brief for the
appellants by *Tomkins, Merrills & Smith,* and a separate
brief by *Lamoreux & Gleason* for the appellant *Anna
Holmes.* For the respondents there was a brief by *G. W.
Hazelton,* attorney, and *T. L. Kennan,* of counsel.

 The following opinion was filed April 25, 1889:

 COLE, C. J.  A motion for rehearing is made by the ap-
pellants in this case, in order that the court may decide
(1) as to the rights of the infants to maintain this action
before redemption, and (2) as to the rights of innocent pur-
chasers of lots set off to Whittlesey in the partition judg-
ment which is held void for fraud.

 As to the first point, in the complaint the plaintiffs ask
for relief on condition of paying into court the amount nec-
essary to redeem any of the lots which had been sold for
nonpayment of taxes, and the discharge of all claims based
upon the tax deeds which are set aside, and the court in the
tenth finding found that the plaintiffs had paid into the
office of the county clerk of Ashland county the amount of
money requisite to redeem their interests. The minors
could not be deprived of their right to redeem from the

tax liens without annulling the statute, which gives them that right. We did not overlook the point taken, that they must exercise that right before commencing the action, but considered it so obviously untenable as not to require notice. In this case there was an offer to redeem, and a redemption in fact; and the decisions in *Wright v. Wing*, 18 Wis. 45, and *Woodbury v. Shackleford*, 19 Wis. 55, have no application.

In regard to the second point, we remark that it is not raised by the pleadings, and any expression of opinion upon it would be traveling outside of the issues made on the record. None of the defendants put in an answer claiming to be innocent purchasers of lots set off to Whittlesey in the partition judgment of July, 1877; therefore there was no decision of the rights of such parties, for obvious reasons. If it should be made to appear that there are any such parties, the court below may perhaps protect them in the partition by setting off their lots to the defendant *Whittlesey*. But there is nothing in the record before us which justifies our expressing an opinion as to the rights of innocent purchasers from Whittlesey under the partition decree; consequently we express none.

*By the Court.*— The motion for a rehearing is denied, with $25 costs.