Thomas and others, Appellants, vs. Thomas, Executor, and others, Respondents.

*May 4 — May 25, 1894.*

*Estates of decedents: Setting aside final settlement: Assignment of estate to person claiming to be widow: Fraud: Concealment of prior marriage: Laches of heirs.*

1. In a proceeding to set aside the final settlement of the estate of a decedent on the ground that the person to whom, as his widow, the estate had been assigned had never been his lawful wife and had fraudulently procured such assignment, it is *held*, upon the evidence, that there had been no concealment or misrepresentation by her of the facts relating to her prior marriage; and, it appearing that before she married the deceased she had obtained a judgment of divorce from her prior husband in a court of competent jurisdiction, which judgment was fair on its face and was believed

by her to be valid, it was not fraud for her, relying on such di-
vorce, to state that she was the lawful wife of the deceased, even·
though such divorce was in fact invalid.

2. The petitioners, the heirs at law of the deceased, knew or had heard
   rumors of the former marriage of the widow, but took no steps to·
   prevent the assignment of the estate to her, and apparently made
   no inquiries until more than five years later and after her death.
   The testimony tending to show that they obtained any knowl-
   edge of the facts after her death was very slight. *Held*, that if
   ignorant of the facts at the time of the settlement of the estate,
   they were negligently ignorant, and that they had been guilty of
   laches which would preclude their obtaining the relief sought.

APPEAL from the Circuit Court for *Grant* County.

This was a proceeding in the county court of Grant
county to vacate and set aside the settlement and final
order of distribution of the estate of James Thomas, de-
ceased, to his widow, Susan J. Thomas, on the ground that·
she was never his lawful wife and had fraudulently pro-
cured an assignment of said estate to her. The petitioners
are the brothers and sisters of said James Thomas, deceased,
and his sole heirs at law. The petition states substantially
that James Thomas died July 18, 1883, intestate, without
issue or parent, leaving an estate in Grant county worth
over $30,000; that in September, 1883, Susan J. Thomas,
his alleged widow, was, on her own petition, appointed ad-
ministratrix of the estate, and that she duly qualified and
settled such estate, and on the 7th of November, 1884,
rendered her final account of her administration; and that
on December 9, 1884, a final order was made by said county
court, settling said estate and assigning the whole thereof
to said Susan J. The petition further states, substantially,
that the said Susan J. was not the widow of said deceased,
but falsely represented herself to be such widow in order
to deceive the court and procure such final order; that in
fact said Susan J. was in November, 1857, duly married to
one Magee, in Ohio; that she came to Grant county in the

year 1860, representing herself to be a single woman; that said Magee is still living, and that Susan J. was never divorced from him; and that said Susan J. died February 8, 1890. The petition also states that the petitioners had no knowledge of the marriage of Susan J. to Magee, and believed her to be a single woman when she married the deceased, and did not acquire such knowledge until after the death of said Susan J.; that said Susan J. died testate, bequeathing all her property to the defendants, and that her will has been duly proven; that the defendant *Joseph P. Thomas* has duly qualified as executor thereof and is now acting as such. The relief prayed is that the settlement of the estate of James be vacated and annulled, and that the executor of Susan J. account for all her estate, and pay it into court; and that an administrator of the estate of James be appointed to take charge of and resettle said estate.

The defendants answered the petition by a general denial, except that they admitted Susan J.'s prior marriage to Magee, but alleged that she was duly divorced from him, before marrying James, by a decree of the court of common pleas of Lorain county, Ohio. As a separate defense the defendants also pleaded the proceedings and final order in the county court of Grant county in the matter of the settlement of the estate of James Thomas.

Judgment was rendered against the petitioners in the county court of Grant county, from which they appealed to the circuit court of said county.

The evidence in the circuit court showed substantially the following facts: That, for some years prior to 1865, James Thomas was an unmarried man, residing in Grant county, Wis., and that he continued to reside there until his death in July, 1883; that, in 1857, Susan J. Richmond, who afterwards married said James Thomas, was duly married to Lewis Magee in Cuyahoga county, Ohio, and that

they lived together as husband and wife until some time in
1858, when they separated, and never thereafter lived to-
gether; that Susan J. continued to live in Ohio with her
relatives until some time about the year 1860, when she
came to Wisconsin, and lived for a time with one John
White, her cousin, in Grant county, in the immediate neigh-
borhood of the residence of James Thomas; that she was
known when in Wisconsin by the name of Susan J. Rich-
mond; that James Thomas commenced to keep company
with her, and became engaged to marry her; that she re-
turned to Ohio at some time prior to her marriage to James
Thomas, and, while in Ohio, commenced an action for di-
vorce against Lewis Magee, and procured a judgment of
divorce by default at the October term, 1864, of the court
of common pleas of Lorain county, Ohio; that she returned
to Wisconsin June 7, 1865, and within two or three days
thereafter was married to James Thomas, and lived with
him as his wife in Grant county from that time until the
death of said James Thomas; that said Lewis Magee was
living at the time of the trial of this action, and had never
obtained any judgment of divorce on his part; that James
Thomas died July 18, 1883, without children or parents,
leaving the petitioners, his brothers and sisters, as sole heirs
at law, unless Susan J. was his heir by reason of being his
lawful widow; that Susan J. instituted and prosecuted pro-
ceedings in the county court of Grant county, Wis., to set-
tle the estate of said James, in which proceedings she rep-
resented that she was the lawful widow of said James, and
that a final order was made in such proceedings, assigning
to her the estate of said James, in December, 1884; that
said Susan J., by her last will, devised the property received
by her from James Thomas to the defendants, and that
*Joseph P. Thomas* was appointed and duly qualified as exec-
utor of such will, and still is such.

This proceeding was commenced by the filing of the pe-

Thomas and others vs. Thomas and others.

tition in the county court of Grant county, January 10, 1891. The record of the divorce action and judgment in Ohio was offered and received in evidence; also certain sections of the statutes of Ohio, by which it appears that an applicant for a divorce must be a resident of the state at least one year next preceding the filing of the petition for divorce. There was a sharp contest in the evidence as to the time when Susan J. returned from Wisconsin to Ohio prior to her marriage with James. The respondents' testimony tended to show that she returned in 1862 or 1863, considerably more than a year before she made her application for a divorce in Ohio. The appellants' evidence, on the other hand, tended to show that she did not return to Ohio until 1864, a few months or weeks previous to the filing of her application for divorce. On this ground it was contended by appellants that the Ohio divorce was utterly invalid, and that Susan J. knew that fact.

The circuit court made findings to the effect that the proceedings in the Ohio divorce suit were in accordance with the statutes of the state of Ohio, and that the Ohio court having in that action determined that it had jurisdiction, and that said Susan Magee was a resident of the state of Ohio and had been such for one year next preceding the commencement of said action, " this court will assume that such findings and determination of said court of common pleas of Lorain county, Ohio, was correct, and this court will not undertake to determine as an original question, upon the proofs adduced in this court, whether said Susan was or was not in fact a resident of the state of Ohio at the time of the commencement of such divorce suit and for one year next prior thereto." The circuit court also found that Susan was the lawful widow of said James, and as such was his sole heir at law and entitled to his entire estate; and thereupon affirmed the judgment of the county court. From this judgment the petitioners have appealed.

Thomas and others vs. Thomas and others.

For the appellants there were briefs by *H. D. York,* *Orton & Osborn,* and *S. H. Taylor,* and oral argument by *S. H. Taylor* and *P. A. Orton.* To the point that parties are not required to act on mere rumor, they cited *O'Dell v. Burnham,* 61 Wis. 570; *Parker v. Kane,* 4 id. 16; *Lamont v. Stimson,* 5 id. 447; *Buttrick v. Holden,* 13 Met. 357.

For the respondents there was a brief by *A. R. Bushnell* and *W. E. Carter,* and a separate brief signed by *Bushnell & Watkins,* attorneys for *Jos. P. Thomas,* executor, and *Ed. M. Lowry,* attorney for *Martha E. Barnes;* and the cause was argued orally by *W. E. Carter, A. R. Bushnell,* and *R. A. Watkins.*

WINSLOW, J. We do not deem it necessary to decide whether the circuit court was right in determining that the Ohio judgment of divorce was valid and binding. We are satisfied that the judgment in this proceeding was right and must be affirmed, for the reason that the final judgment of distribution of the estate made by the county court of Grant county was conclusive and cannot be set aside on the facts shown in evidence. The power of the county court to vacate a final order shown to have been procured by fraud is well settled in this state. *Estate of Leavens,* 65 Wis. 440. Such a proceeding is in the nature of a bill in equity to relieve against a judgment at law. The relief will be granted when the former judgment is inequitable, and the defendant was ignorant of the fact in question pending the former suit, or was prevented from making his defense by fraud, accident, or the acts of the opposite party, unmixed with negligence or fault on his part. *Stowell v. Eldred,* 26 Wis. 504; *Tucker v. Whittlesey,* 74 Wis. 74; *Marine Ins. Co. v. Hodgson,* 7 Cranch, 332. It is obvious that the ignorance of fact which will afford ground for relief must not be intentional or negligent ignorance; otherwise, a party might wilfully remain ignorant

pending an action, and make no investigation of the facts
on which he knows his rights must depend, and afterwards
invoke such negligent ignorance as a ground for setting
aside the solemn judgment, long since rendered, of a court
of competent jurisdiction.   Such a result is not to be tol-
erated.   Whether, therefore, we regard this proceeding
as founded upon fraudulent concealment of fact by Mrs.
Thomas or mere ignorance of fact by the petitioners pend-
ing the settlement of the estate, in either case, if their
failure to defend was wholly or partially the result of their
own intentional or negligent ignorance of fact, they cannot
now be granted relief.

First, then, as to the alleged fraud on the part of Mrs.
Thomas.   It is claimed by the petitioners that she delib-
erately concealed the fact of her prior marriage and divorce
in Ohio, and that the petitioners never knew of these facts
until after her death; that this divorce was void, because
she had not resided in Ohio for a year prior to the decree,
and that she knew this fact; that nevertheless she repre-
sented herself as the lawful widow of James Thomas in the
proceedings to settle his estate, and thus secured the mak-
ing of the final order assigning to her the whole estate.
The difficulty is that most of these alleged facts are not
proven by the evidence.   The circuit court refused to find
that Mrs. Thomas concealed the fact of her prior marriage
to Lewis Magee, and the evidence entirely justifies that re-
fusal.   It is true the evidence shows that she resumed her
maiden name after her brief dream of married bliss with
Magee was over and they had separated, but this is not un-
usual or unnatural.   Aside from this circumstance, there is
no tangible evidence of concealment.   There is absolutely
no evidence of any denial or untrue statement as to her
former marriage or divorce made by her, or by any one to
her knowledge, either to petitioners or to any one else.
The evidence shows very clearly that it was common talk

and rumor in the neighborhood that she had been previously married and divorced. Mrs. Ritter, one of petitioners' witnesses, says that in 1865 the rumor "was that she was married; that she was divorced; and that she was not divorced, but that her husband was dead;" and that she talked the rumor over with *Henry Thomas* within five years after the marriage of Susan to James. Mrs. Vedder, another of petitioners' witnesses, states that "it was reported in the neighborhood that she went to Ohio for the purpose of getting a divorce from her husband, whose name was Lewis Magee." From another witness it appears without dispute that in the spring of 1864 one Sigsby reported around the neighborhood her marriage to Magee, and that he had seen Magee in the army. It also appears without dispute that she told John Barr, a neighbor, in 1862 or 1863, all about her marriage with Magee; that she told Mrs. Loomis, in 1864, that she was going to Ohio to get a divorce from her husband, so she could marry Thomas; and that she told other witnesses that she was going back to Ohio to get a divorce from her husband, and that Mr. Thomas was furnishing the money for the purpose. All of the witnesses to these facts were immediate neighbors. It is also clear from the evidence that James Thomas himself knew of her marriage to Magee and of her divorce before he married her. There seems to have been no concealment made or attempted. On the contrary, it was neighborhood talk of the kind that spreads with great swiftness. That the immediate relatives could remain ignorant of it is wellnigh incredible. It is certain that two of the petitioners did not remain ignorant of it. *Mrs. Hillary*, a sister of James, testifies that her father told her twenty-three years ago that Susan was married before she married James, but she did not believe it; and *Henry* testifies that Mr. Barr told him sixteen or seventeen years ago that she had been a married woman, but that her husband was dead. There

Thomas and others vs. Thomas and others.

is also evidence of other witnesses that *Mrs. Hillary* and *Henry Thomas* had greater knowledge of the facts than they now admit. But we shall not pursue the testimony on this subject further. It satisfies us entirely that there was no concealment or misrepresentation of the facts made or attempted by Susan either before, at the time of, or after, her marriage to James.

But it is said that Susan was guilty of a fraud in representing, during the settlement of the estate of James, that she was the lawful widow of James, when she was not such in fact, because the decree of divorce from Magee was invalid. As we have before said, we do not deem it necessary to determine the validity of that decree. It is attacked on the ground that Susan had not resided for a year in Ohio when the action was instituted, and much evidence, *pro* and *con*, on this subject was introduced at the trial. It was the decree of a court of competent jurisdiction, and perfectly fair on its face. Susan undoubtedly believed it to be a perfectly valid release from her marital vows to Magee. Whether it was valid or not was a question of law rather than of fact, and one of which Susan could not be expected to have any knowledge. Under these circumstances, can it be called a fraud if she relied upon it, and, so relying, stated that she was the lawful wife of James? We think not; and in the utter absence of any evidence showing any misstatements of fact, or any artifice or device to prevent investigation or to throw any persons interested off their guard, we do not hesitate to hold that there was no fraud shown on the part of Susan in obtaining the final decree in the county court.

Having thus disposed of the alleged fraud, we come to the question whether there was such ignorance of fact on the part of the petitioners, without their fault or negligence, which entitles them to relief. We think this question must be answered in the negative. The sole question

in the administration proceedings, on which the rights of
Susan as well as the petitioners depended, was the question
whether Susan was the lawful wife of James; and the peti-
tioners must have known that this was the question. As
we have said before, it is well-nigh incredible that the im-
mediate relatives were ignorant of the common neighbor-
hood reports as to Susan's previous matrimonial venture,
and two of them substantially admit that they were in-
formed of the principal fact years before the death of
James. Notwithstanding all this, however, they allowed
the probate proceedings to proceed without any action.
They did not even make an inquiry, apparently. They
were personally summoned to show cause why the final
order of distribution should not be made, and they still
remained silent and inactive, and so continued for more
than five years, till the lips of Susan also had been sealed
by death. Great activity seems then to have broken out in
the camp of the petitioners, who, singularly enough, had
not been remembered in Susan's will. But we think this
activity commenced entirely too late. If they were igno-
rant, we think, under the circumstances here present, they
were negligently ignorant. They were of full age, and we
think were fairly put on inquiry by the facts within their
knowledge during the administration proceedings. The
testimony which tends to show that they obtained any
knowledge of facts after Susan's death which they did not
have before is of the slenderest kind. They claim that
they were told of the former marriage, and that there had
been no divorce, by Mr. and Mrs. Wildman. Both these
persons denied having given any such information. We
think, under well-established rules, the petitioners must be
held guilty of laches. *Rogers v. Van Nortwick,* 87 Wis.
414, and cases cited in that case. They might and ought
to have made the discovery long before. Not having made
any inquiry, even of Susan herself, when they ought to have

Stone vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

made it, they will not be allowed to make it six years later, when the opposing party is dead and the main source of evidence thereby cut off, and thus overturn a judgment rendered without fraud and on due and personal notice to all. No decision of this court authorizes relief in such a case, nor do we think it is authorized by any well-considered authority.

The record of the Ohio divorce proceedings was objected to as not properly authenticated. We regard the authentication as sufficient.

The view we have taken of the case renders unnecessary any discussion of other questions. Upon the whole record we are satisfied that the judgment below was right.

*By the Court.*— Judgment affirmed.