SCHEER, Administrator, Respondent, vs. ULRICH, Appellant.

*October 15—November 5, 1907.*

*Judgments of county court: Vacating: Fraud: Insane persons: Guard-ian and ward: Allowance of claims: Evidence: Admissions: Laches.*

1. An order or judgment of a county court may be set aside for fraud or fraudulent concealment on the part of the prevailing party.
2. Fraud which can be made the basis of an attack upon a solemn judgment of a court of record must have directly induced the rendition of the judgment, not merely have induced or brought about a condition upon the real existence of which the court acted as the basis of its decree.
3. On the rendition of judgment upon a claim filed against an incompetent's estate, no objection was made by the general guard-

ian or guardian. *ad litem*, although the general guardian and his attorney had been informed that the claimant had repeatedly admitted full payment and that the incompetent did not owe anything. After the death of the incompetent the administrator brought proceedings to set aside the judgment allowing the claim, and the trial court on the evidence, stated in the opinion, found the claimant guilty of fraud, the guardian negligent and guilty of want of ordinary care in failing to investigate as to the justice and merits of the claim, and ordered judgment vacating and setting aside the judgment of the county court. *Held*, that the findings were sustained by the evidence, and the judgment by the facts admitted or found.

4. While evidence of statements or admissions by a party, made in casual conversations and to disinterested persons, is very weak testimony, yet, where the admission is deliberately made and precisely identified, the evidence it affords is of the most satisfactory nature.

5. In a proceeding in the county court by an administrator to set aside a judgment allowing a claim against his intestate while under guardianship as an incompetent, it appeared that the administrator was a grandson of the incompetent and knew of the allowance of the claim and facts impeaching its validity nearly a year before the incompetent's death. *Held*, that the administrator could not be convicted of laches, since until the death of the grandfather he could not know whether he would get any interest in the estate or not, and upon the death he had promptly taken the requisite steps to set aside the judgment.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

It appears from the record, and is undisputed or found by the trial court, that George Thies, an incompetent person, died intestate October 4, 1905, being at the time about ninety years of age. His wife died about twenty years before he did. They had but one child, and she married Hans Scheer in 1875 and died in 1884, leaving two children her surviving—*George Scheer*, a party to this proceeding, and *Gertrude Scheer*, who was never married and died in September, 1899, leaving the said *George Scheer* as the sole surviving heir at law of George Thies, deceased. Hans Scheer and his first

wife, and after her death his second wife, lived at the home of George Thies until 1896, when they removed therefrom and arranged with the appellant, *Mrs. Ulrich,* and her husband to live with George Thies and board him in his house, and they remained at his house and provided him with board from October 1, 1896, until the time of his death, October 4, 1905. Under the agreement of 1896 the said George Thies retained for his own use three rooms on the first floor, and the remaining eight rooms in the house were occupied by *Mrs. Ulrich* and her family in payment of his board, which was valued at $10 per month, but the said George Thies was to provide at his own expense for the care of himself and rooms, washing, mending, and fuel. Up to the time of her last illness Gertrude frequently visited her grandfather and took care of him and his rooms. Upon the death of Gertrude in 1899 Thies offered to pay the Ulrichs $5 per month additional to what they were then getting if they would remain and provide him with board and care, which offer they accepted. *George Scheer* was absent attending college at Madison and Chicago from the fall of 1896 to March, 1904, and during that time only saw his grandfather in vacation. From August, 1899, to August, 1902, Thies failed both mentally and physically and required more care and attention than previously, and upon occasions required special care, for which Thies paid *Mrs. Ulrich* fifty cents for each washing thereby made necessary. In January, 1901, a tentative agreement was made whereby Thies was to convey and transfer to the Ulrichs certain property, for which they were to provide him with board, care, and lodging as a member of their family during his life, and the papers were drawn but never executed. June 18, 1902, upon due application to the county court and hearing therein, Emil Clarenbach was duly appointed guardian of the person and estate of the said Thies, and he qualified and acted as such until the death of Thies, October 4, 1905. On August 1, 1902, such guardian filed

an inventory of the estate of said ward, showing personal property of the value of $6,150 and real estate of $3,000. Soon after, and pursuant to due notice given, August 1, 1902, *Mrs. Ulrich* filed a claim in county court against the estate of the said incompetent for the three years immediately prior to the appointment of said guardian for $300 for each of said years, making in all $900, and an order was entered in said county court fixing February 11, 1903, as the time and place for hearing said claim. Upon the hearing of said claim on the last-mentioned date, one Felix Benfey, an attorney at law, was appointed guardian *ad litem* for said incompetent, and Francis Williams appeared as attorney for the guardian, and no objection was filed against the allowance of said claim, and upon the sole testimony of *Mrs. Ulrich* the county court allowed said claim February 11, 1903, at $900, which with the interest, amounting in all to $917, was paid by said guardian July 30, 1903. *Scheer,* subsequently the administrator, did not learn of such allowance or payment until September, 1904. After the death of Thies October 4, 1905, the grandson, *George Scheer,* was duly appointed administrator of his estate, and thereupon and on November 21, 1905, he as such administrator filed a petition in the county court to vacate and set aside the allowance of the claim of *Mrs. Ulrich* on the ground that the same was obtained by fraud. Upon the hearing thereof in the county court the same was denied by order dated July 5, 1906, from which order the administrator appealed to the circuit court.

On the trial of said appeal in the circuit court that court found, in addition to the facts stated, in effect, that in numerous conversations with different persons during the years 1901 and 1902 *Mrs. Ulrich* repeatedly admitted in effect that Thies did not owe her anything; that everything was paid; that he had paid her in advance up to January, 1903,

as they needed the money; that in February, 1902, she stated that Thies had paid her for everything so far and she had nothing more to get; that there was nothing coming to her, and that Thies was paying for his board and care, and that he was no extra burden; that in the spring of 1902 she denied having received $400, but admitted that she had received $250; that prior to said allowance in the county court said guardian and his attorney had been informed of such statements and admissions of *Mrs. Ulrich.* The trial court further found that the verification of the claim of *Mrs. Ulrich,* to the effect that the same was just and true and that no part thereof had been paid, was wholly untrue and fraudulent and known to be so by the claimant; that she had suppressed or concealed from the court the making of the second or new oral agreement between Thies and the Ulrichs mentioned; that in making no objection to such claim the guardian did not use ordinary care, nor even communicated with the sole heir at law in respect to the merits of such claim; that Mr. Ulrich had also filed a claim against said estate of $915 for care and nursing for the incompetent, and that said claim was still pending.

As conclusions of law the trial court found that *Mrs. Ulrich* was guilty of fraud in the respects stated in her testimony before the county court in procuring such allowance, and that such allowance was obtained by and through her said fraud; that said guardian was negligent and guilty of a want of ordinary care in failing to investigate as to the justice or merits of said claim and in failing to make seasonable objections thereto at the time of the hearing in the county court February 11, 1903; that the administrator had failed to exercise ordinary care in failing to inform the guardian or his attorney as to the conversation he had with *Mrs. Ulrich.* The trial court ordered judgment to the effect that the order or judgment of the county court dated July 5, 1906,

be and the same was thereby reversed, and the county court was thereby ordered and directed to vacate and set aside said order or judgment of February 11, 1903, allowing said claim at $900; that costs and disbursements of the appeal to the circuit court be paid to the administrator by *Mrs. Ulrich*, and that as between the administrator and the guardian on the appeal no costs were allowed. It was further ordered that the judgment be remitted to the county court for further proceedings in accordance with the decision of the circuit court.

From the judgment so entered accordingly *Mrs. Ulrich* appeals.

For the appellant the cause was submitted on the brief of *Francis Williams*.

For the respondent there was a brief by *Wegner, Blatchley & Gilbertson*, and oral argument by *Andrew Gilbertson*.

CASSODAY, C. J. It is conceded on the part of the appellant that the only questions for consideration are whether the facts testified to by the witnesses support the findings, and whether the findings, if true, support the judgment. A summary of such findings and testimony is given in the foregoing statement and need not be here repeated.

Counsel further concedes that it is well settled in this state that an order or judgment of the county court may be set aside for fraud or fraudulent concealment on the part of the prevailing party. *Estate of Leavens*, 65 Wis. 440, 27 N. W. 324; *Thomas v. Thomas*, 88 Wis. 88, 59 N. W. 504; *Estate of O'Neill*, 90 Wis. 480, 63 N. W. 1042; *Parsons v. Balson*, 129 Wis. 311, 109 N. W. 136. But it is claimed that the frauds for which such order or judgment may be set aside are those which are extrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit. In support of such claim counsel cites *U. S. v. Throckmorton*, 98 U. S. 61. See, also, *Hilton v. Guyot*, 159 U. S. 113, 207,

16 Sup. Ct. 139. That case has been cited approvingly by this court during the present term to the proposition that:

"Fraud which can be made the basis of an attack upon a solemn judgment of a court of record must have directly induced the rendition of the judgment, not merely have induced or brought about a condition upon the real existence of which the court acted as the basis of its decree." *Uecker v. Thiedt, ante,* p. 148, 113 N. W. 447.

In the case at bar the claimant was seeking to charge the estate of a person who had been adjudged incompetent to take care of his person or his property. At the time of the rendition of the judgment of February 11, 1903, complained of, the only person or persons outside of the courts legally authorized to protect said estate from false and unfounded claims were the general guardian and guardian *ad litem* previously appointed by the county court as mentioned. No objection was made to the allowance of such claim, notwithstanding such general guardian and his attorney had long prior to said allowance been informed that the claimant had repeatedly admitted that she had been fully paid and that the incompetent did not owe her anything, but the court found that they had, prior to the rendition of said judgment, forgotten such information. In respect to such admissions counsel invokes the rule, often asserted by this court, that "evidence of casual statements or admissions by a party, made in casual conversations and to disinterested persons, is very weak testimony, because of the liability of the witness to misunderstand or forget what was really said or intended by the party." *Haven v. Markstrum,* 67 Wis. 493, 30 N. W. 720. The rule as to the weakness as evidence of admissions so made is supplemented by Mr. Greenleaf with this statement: "But where the admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature." 1 Greenl. Ev. (15th ed.) § 200. That statement was fully sanctioned by this court at an early

day. *Dreher v. Fitchburg,* 22 Wis. 675, 681. To the same effect, *Saveland v. Green,* 40 Wis. 431. The admissions of the claimant mentioned in the foregoing statement were made with apparent deliberation. We cannot say that the trial court was not justified in treating such admissions as evidence in the case. As often observed, that court saw the witnesses, and was in a much better position to determine the facts than this court.

It is claimed that because *Scheer,* the administrator, learned of the allowance of the claim in September, 1904, he was therefore guilty of laches in not taking action to test the validity of the claim during the life of the intestate; but at the time of learning the fact the claim had been allowed and fully paid. The administrator got no interest in the estate until the death of the intestate. Until then he could not know whether he would get any interest in the estate or not. Upon the death of his grandfather he promptly took the requisite steps to set aside the judgment.

We must hold that the findings are sustained by the evidence and that the judgment is sustained by the facts admitted or found.

*By the Court.*—The judgment of the circuit court is affirmed.