CARLSON and wife, Respondents, vs. MACCORMICK and
wife, Appellants.

*September 14—October 10, 1922.*

*Adoption: Secret agreement between parties: Fraud on court:
Vacation of order: Change in circumstances of mother.*

1. If a fraud was practiced on the court, it has power in the
furtherance of justice to revoke an order of adoption made
by it, provided the revocation did not disturb rights that had
been confirmed by the statute of limitations.

2. In a proceeding for adoption, failure of the parties to disclose
to the court an agreement between themselves that in the
event the natural parent should subsequently marry and have
a good home she might have the child if she desired did not
amount to fraud, either actual or constructive, committed
upon the court which would warrant interference of a court
of equity.

3. A fraud which will warrant the interference of equity or a
court exercising equity powers must be extrinsic to the action
and practiced either upon the court or upon the party, and not
a fraud respecting the merits and creating the condition or
conditions in the action passed upon by the court.

4. Even if the understanding between the parties that if the nat-
ural parent should subsequently marry she might have the
child would have resulted in a denial of the petition, it would
not warrant the vacation of the order of adoption entered
upon the petition, where the parties have acted in good faith.

5. Where an order of adoption has been entered on petition and by
consent of the parties, a mere change in their circumstances
affords no legal justification for setting it aside.

APPEAL from an order of the county court of Mara-
thon county: F. E. BUMP, Judge. *Reversed.*

The appeal is from an order refusing to set aside an
order or judgment of adoption entered on the 21st day of
February, 1918.

In the year 1917 *Carl Carlson* and *Augusta MacCormick*,
now the wife of *Carl Carlson*, were engaged to be married.
The parents of *Augusta, Malcolm MacCormick* and *Clara
MacCormick*, objected to the marriage on religious grounds,
the *MacCormicks* being members of the Roman Catholic

church, while *Carlson* belonged to a Protestant church.
The engagement was broken, *Carl* went to Tomahawk,
and on December 17, 1917, *Augusta MacCormick* gave
birth to the child Mary Althea. She was at the time twenty
years of age. Thereafter she instituted proceedings in the
circuit court for Marathon county which resulted in *Carl
Carlson* being adjudged the father of the child, and in
satisfaction of the judgment he paid a lump sum in lieu
of providing support for the child. On February 21, 1918,
*Malcolm MacCormick* and *Clara MacCormick,* his wife,
filed a petition in the county court of Marathon county
praying for an order of adoption for Mary Althea. An-
nexed to the petition was the written consent of the mother,
*Augusta MacCormick.* A hearing was had in open court
and the parties were represented by attorneys. *Augusta*
was sworn and testified that she had signed the consent to
the adoption of her child by her father and mother; that she
was willing they should adopt her and was satisfied they
could give her a better home than she could. *Mr.* and *Mrs.*
*MacCormick* were sworn as witnesses and testified in the
presence of *Augusta* that they understood, if an order of
adoption was made, the child would become the same as
if born of them and that they would have all the rights
of the parent over the child. At the conclusion of the
hearing the order of adoption was made and the name of
the child was changed to Mary Althea MacCormick, that of
its parents by adoption. From the time of her birth the
child had resided with her mother in the home of *Malcolm*
and *Clara MacCormick,* was taught to call her natural
mother "Gussie" and her parents by adoption "Father" and
"Mother."

It appears that *Carl Carlson* entered the service of the
United States during the war and upon his discharge re-
turned to the city of Wausau, where the *MacCormicks* lived.
On February 5, 1920, *Carl Carlson* and *Augusta MacCor-
mick* were married, and since their marriage they have

resided in the city of Wausau, *Carlson* being employed as a janitor with a salary of $110 per month.  Shortly after their marriage *Augusta* asked her parents to surrender the child, Mary Althea, to her.  The request was refused and a petition was filed praying that the court revoke the order of adoption made February 21, 1918.  The petition for revocation was filed in July, 1921, in the circuit court for Marathon county.  There was a demurrer to the petition, and by order of the circuit court all the files and records were transmitted to the county court of Marathon county, pursuant to sec. 2836*b* of the Statutes.  Issue was joined.  A trial was had on November 28, 1921, and from the order entered revoking the order or judgment of adoption this appeal was taken by *Malcolm MacCormick* and *Clara MacCormick*.

The cause was submitted for the appellants on the brief of *Regner & Ringle* of Wausau, and for the respondents on that of *Brown, Pradt & Genrich* of Wausau.

ROSENBERRY, J.  It is claimed by the petitioners in this proceeding that *Augusta Carlson's* consent to the adoption of her child was obtained under circumstances amounting to duress and that at the time of the adoption a constructive fraud was practiced upon the court in that the court was not informed of a conversation had between *Augusta Carlson* and her mother to the effect that if *Augusta* should subsequently marry and have a good home that she might have the child if she desired her.

No claim is made that the order of adoption was in any respect irregular or that either the petitioners here or the respondents were not suitable persons to have the care and custody of the child.  The sole question presented is whether or not the failure of the parties to inform the court at the time the order of adoption was made of the conversation between the petitioner, *Augusta Carlson*, and

her mother, *Clara MacCormick,* amounted to a fraud upon
the court which vitiated the order.   It is not claimed that,
if a fraud was practiced upon the court, the court did not
have power in the furtherance of justice to revoke the
order of adoption, provided such revocation did not disturb
rights that had been confirmed by the statute of limitations.
The law upon this proposition seems to be clear and well
settled.   *In re Fisher,* 15 Wis. 511; *Betts v. Shotton,* 27
Wis. 667; *Archer v. Meadows,* 33 Wis. 166; *Brook v.
Chappell,* 34 Wis. 405; *Baker v. Baker,* 51 Wis. 538, 8
N. W. 289; *Estate of Leavens,* 65 Wis. 440, 446, 27 N. W.
324; *Thomas v. Thomas,* 88 Wis. 88, 93, 59 N. W. 504;
*Estate of O'Neill,* 90 Wis. 480, 63 N. W. 1042; *Hall v.
Hall,* 98 Wis. 193, 73 N. W. 1000; *Weadock v. Ray,* 111
Wis. 489, 493, 87 N. W. 477.

If the failure of the parties to inform the court of the
conversation between *Augusta* and her mother did not con-
stitute a fraud upon the court which would authorize it to
vacate the order of adoption, the question of whether or not
the interests of the child required that the order be revoked
does not arise.   If the order entered in the adoption pro-
ceedings is valid and not vitiated by fraud, the question as
to where the real interests of the child lie was finally and
conclusively determined by that order.   The order of
adoption is to all intents and purposes the solemn judgment
of the court upon the issues presented by the petition and
the answer thereto if there be one.   In a very carefully
prepared decision the judge said:

"I acquit all parties to the adoption proceeding of any
actual deliberate intent to deceive the court.   I realize that
they doubtless thought it not necessary to inform the court
of those details, the absence of which I have concluded
vitiates the order of adoption.   Nevertheless information of
essential facts was withheld from the court, the knowledge
of which might, and very likely would, have resulted in a
denial of the petition.   This constitutes a constructive fraud

on the court, and is sufficient ground for setting the order of adoption aside. In my judgment, the best interests of the child require that it be set aside."

It is not claimed that the statement made to *Augusta* by her mother amounted to a fraud upon *Augusta,* but it is said that the mere fact that the parties to the adoption proceeding failed to disclose to the court the fact that the conversation referred to was had by *Augusta* and her mother amounts to a fraud upon the court. We are unable to see from the circumstances in this case the slightest evidence of any fraud, actual or constructive, committed upon the court. The alleged promise of the mother to *Augusta* to return the child to the custody of *Augusta* under the circumstances stated might well have been an additional reason for making the order of adoption. It certainly would have afforded no ground for denying the application. The question of what constitutes a fraud upon the court which will justify the court in setting aside a judgment of the court is quite fully discussed in *Phillips v. Chase,* 203 Mass. 556, 89 N. E. 1049, 30 L. R. A. N. s. 159, note and cases cited.

In any event a fraud which will warrant the interference of a court of equity or a court exercising equity powers must be extrinsic to the action and practiced either upon the court or upon the party, and not a fraud respecting the merits and creating the condition or conditions in the action passed upon by the court. *Boring v. Ott,* 138 Wis. 260 (119 N. W. 865), and concurring opinion, p. 280, and authorities cited.

If, as held by the trial court, the conversation or understanding between *Augusta* and her mother, if known to the court, would have resulted in a denial of the petition for adoption, it would not warrant the vacation of judgment by the court where the parties have acted in good faith. 1 Ruling Case Law, p. 624, § 35; *Brown v. Brown,* 101 Ind. 340; *Nelson v. Nelson,* 127 Ill. App. 422; *James v. James,* 35 Wash. 655, 77 Pac. 1082; 17 Ann. Cas. 548, note.

It may well be, were the question an open one, that under the circumstances as they now exist a finding that the best interests of the child would be promoted by transferring her custody from the adoptive parents to her natural parents should be sustained. On the other hand, mere change in the circumstances of the parties affords no legal justification for setting aside the solemn judgment of the court. In determining whether or not a fraud was committed upon the court, the fact that the circumstances of the parties subsequently changed is immaterial.

It was said in *Parsons v. Parsons,* 101 Wis. 76, 77 N. W. 147:

"The proceedings to avoid the judgment of adoption are clearly of an equitable nature, and after the lapse of many years, during which time the status of the subject of adoption has been recognized as legally fixed by the judgment of the county court, by all parties to the proceedings, one of those parties on whose motion the judgment was rendered is in no position to appeal to the equity powers of the court to declare it void. The plainest principles of estoppel apply to the situation. Appellant petitioned for the judgment. It was entered on her motion. The person most interested, the child, was a ward of the court, and its status for life was entirely and irrevocably changed by the result of the proceedings if they were valid. Their validity was recognized by the appellant [the adoptive mother] till she became pecuniarily interested in changing her position. Clearly, she cannot be aided by a court of equity to do that to the injury of the person she was instrumental in locating in her family as her adopted son."

While the interest of the petitioner, *Augusta,* in having the order of adoption set aside is not pecuniary, we do not see that that fact in any way alters the situation. The adoptive parents have rights under the judgment which should not be disturbed except upon sufficient legal grounds. It would be trifling with the solemn determination of the court to permit its decrees to be vacated and set aside because one of the parties thereto, by reason of a change in

her circumstances, had changed her mind. If the order was void for fraud upon the court, it was void from the day it was made. It did not become so later. We see no legal justification for vacating the order of adoption.

*By the Court.*—The order setting aside the order of adoption is reversed, with directions to the county court to dismiss the petition upon the merits.